SHEDD, Circuit Judge,
dissenting:
Carl Melvin Townes commenced this habeas action in 2004 while he was a prisoner confined in a Virginia correctional center. In his petition, Townes argued that the state erred by classifying him as ineligible for discretionary parole, and he asked for an order directing the Virginia Parole Board (the “Board”) to grant him parole. However, after the district court dismissed his petition on the merits as frivolous, the Board paroled Townes pursuant to Virginia’s mandatory parole law. While the majority concludes that Townes’ mandatory parole does not render his appeal moot, I conclude that it does because his claims no longer satisfy Article Ill’s redressability requirement.
In essence, what Townes wants and what the majority provides is an advisory *553 opinion. Townes does not argue that we can provide him with any relief that would directly remedy his alleged injury. Rather, he asserts that he would use an opinion from us stating that the Board erred in its parole eligibility determination to help him persuade the Board to exercise its discretion and shorten his current term of parole, thereby obtaining a remedy for his injury. However, the Board’s decision to terminate a period of parole is guided by discretionary considerations that are wholly distinct from the factors that guided its decision to classify Townes as ineligible for discretionary parole from his earlier incarceration. Therefore, there is nothing in this record to support the conclusion that the Board would be likely to remedy Townes’ injury by shortening his parole if we issued a decision in his favor — a conclusion that we must reach before we can exercise jurisdiction over the merits of his appeal. Accordingly, I dissent.
I
While Townes was incarcerated for robbing three different restaurants, the Virginia Department of Corrections (the “VDOC”) determined he was ineligible for consideration for discretionary parole because he had three qualifying convictions within the meaning of Virginia’s three-strikes law. See Va.Code Ann. § 53.1-151 (Bl). Townes appealed that determination to the Board, which affirmed the VDOC’s decision. Townes then challenged the Board’s decision by filing a petition for writ of habeas corpus with the Virginia Supreme Court, but that court dismissed his petition as frivolous in November 2003.
Townes then commenced this habeas action in 2004, challenging the Virginia Supreme Court’s decision. After the district court dismissed his petition as frivolous, we granted Townes a certificate of appeal-ability. Before we decided his appeal, however, the Board paroled Townes pursuant to Virginia’s mandatory parole law. See Va.Code Ann. § 53.1-159.[1] In light of his release from prison, we ordered the parties to file supplemental briefs on mootness. In his supplemental brief, Townes argues that his appeal still satisfies Article III requirements because (1) he continues to suffer collateral consequences or an injury-in-fact in the form of certain restrictions on his freedom that are associated with his current term of parole,[2] and (2) his injury is redressable because there is a “possibility ” that the Board would exercise its discretion and shorten his parole if we issued an opinion stating that the Board erred in its earlier parole eligibility determination. See Supplemental Brief of Appellant at 2-3, 8-9 (emphasis added).
II
As the majority recognizes, we must resolve the threshold jurisdictional question of whether Townes’ release from prison moots his challenge to the Board’s parole eligibility determination. In answering this question, we need not resolve any novel issues of law. We have consistently held that a prisoner’s transfer or release from prison moots his challenge to a determination that affected his confinement, including a determination that, according to the plaintiff, unlawfully deprived him of consideration for parole. See, e.g., Taylor v. Rogers, 781 F.2d 1047, 1049, 1051 (4th Cir.1986). Applying this well-established precedent here, I conclude that Townes’ appeal is moot.
*554 A.
The mootness doctrine is a limit on our jurisdiction that “originated in Article Ill’s ‘case’ or ‘controversy’ language.” DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Generally speaking, mootness can be described as “the doctrine of standing set in a time frame,” Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quotation marks omitted), and it recognizes that under Article III the plaintiff normally bears the burden of establishing throughout all stages of litigation (1) that he is suffering an injury-in-fact or continuing collateral consequence,[3] (2) that his injury is fairly traceable to the challenged action or decision, and (3) that a favorable decision would be likely to redress his injury. Spencer, 523 U.S. at 7, 10-14, 118 S.Ct. 978; Hardy, 545 F.3d at 283-84.
B.
Mindful of these Article III requirements, we have recognized that “[mjootness questions often arise in cases involving inmate challenges to prison policies or conditions,” and we have consistently held “that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims.” Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir.2007); see also Hardy, 545 F.3d at 283-85; Taylor, 781 F.2d at 1049, 1051 (dismissing claim that plaintiffs were unlawfully denied consideration for parole as moot); Inmates v. Owens, 561 F.2d 560, 562 (4th Cir.1977). The reasons for finding mootness in such a context are clear:
Any declaratory or injunctive relief ordered in the inmate’s favor in such situations would have no practical impact on the inmate’s rights and would not redress in any way the injury he originally asserted. And the newly situated inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.
Incumaa, 507 F.3d at 287 (emphasis added).
I conclude that these precedents control our analysis and render the claims Townes presented in his habeas petition and in his opening brief on appeal moot. As indicated above, Townes originally asserted that the Board erred by classifying him as ineligible for discretionary parole and thus keeping him incarcerated. However, in light of his release from prison, Townes is no longer ineligible for parole because of the determination he challenged in his habeas petition. Indeed, he has already obtained the relief he sought in his petition— release from incarceration — because he is now on parole and is no longer in prison. Thus, any relief ordered in his favor “would not redress in any way the injury he originally asserted,” and he “has no further need for ... relief, for he is free of the policy or practice that provoked his lawsuit in the first place.” Id; see also Taylor, 781 F.2d at 1048-49, 1051. Therefore, his claims are moot.[4]
*555 In attempting to distinguish our precedents in this area of law, the majority suggests that they are inapposite because they all involved actions that were dismissed as moot “because the plaintiff failed to allege that the challenged act resulted in continuing collateral consequences.” Maj. Op., at 549 n. 3 (emphasis added). Contrary to the majority’s suggestion, however, our opinions in Incumaa, Taylor, and Inmates did not dismiss the plaintiffs’ actions as moot for failure to allege continuing collateral consequences. In Incumaa, for example, it is apparent that we dismissed that action as moot in part because of our inability to “redress” the plaintiffs’ claimed injuries — not because of the plaintiffs’ failure to allege continuing collateral consequences or an injury-in-fact. Incumaa, 507 F.3d at 283, 286-87 (“concluding] that Incumaa no longer stands to benefit from the declaratory and injunctive relief he seeks” and noting that any “relief ordered in the inmate’s favor in such situations would have no practical impact on the inmate’s rights and would not redress in any way the injury he originally asserted” (emphasis added)).
Moreover, to the extent the majority is suggesting that I would dismiss Townes’ action as moot for failure to allege collateral consequences, see Maj. Op., at 549 n. 3, this is simply not correct. As indicated above, I conclude that Townes’ appeal is moot because a decision in his favor would not be likely to redress his alleged injury and therefore would fail to satisfy this separate and independent Article III requirement. I express no opinion on whether he has proved collateral consequences or satisfied the other Article III requirements.
C.
Perhaps because Townes recognizes that Incumaa and our other precedents render his original claim moot, he presents a new argument in his supplemental brief.[5] There, he argues that his appeal continues to satisfy the Article III redressability requirement — -notwithstanding his release from prison — because, if we hold that the Board erred by classifying him as ineligible for discretionary parole, it is “possible]” that the Board will redress his alleged injury by exercising its discretion and shortening his current term of parole. See Supplemental Brief of Appellant at 8-9 (emphasis added).
1.
As previously stated, the Article III limits on our jurisdiction include a requirement that the plaintiffs injury be redress-able, and it has long been settled that the normal standard for measuring whether an injury is redressable is whether a decision in the plaintiffs favor would be likely to remedy his injury. See, e.g., Spencer, 523 *556 U.S. at 7, 118 S.Ct. 978. Here, Townes does not argue that a decision in his favor would be “likely” to remedy his injury. In fact, Townes does not argue that a decision in his favor would in any way directly remedy his injury. See Supplemental Brief of Appellant at 8-9. Instead, Townes contends that he only needs to show that there is a “possibility” that a decision in his favor would redress his injury, and he asserts that he has made this showing because the Board might shorten his current term of parole if we issue a decision in his favor. Id.
In essentially agreeing with this argument, the majority concludes that Townes does not need to show that his asserted injury is likely to be redressed by a favorable decision from this Court. This is so, the majority states, because this case falls within a special category of cases where the plaintiff needs relief from a federal appeals court as a “necessary antecedent” to obtaining the ultimate relief he wants. Maj. Op., at 547, 548. However, this is not one of those cases. As Townes acknowledged during oral argument, he does not need any merits-based relief from us to obtain a remedy for his injury. Indeed, Townes currently is (and has been) capable of asking the Board to shorten his parole, and the Board currently possesses authority to grant him this relief. See, e.g., Va.Code Ann. § 53.1-136.[6] Accordingly, any asserted restriction on Townes’ freedom can currently be adjusted through existing state legal and administrative processes regardless of whether he obtains favorable merit s-based relief from us.[7]
The majority also states that the redressability analysis applied by the Supreme Court in racial set-aside cases supports its position because in those cases the plaintiff does not need to show that he is likely to obtain the ultimate relief he wants. See Maj. Op., at 547-48. Contrary to the majority’s suggestion, however, the Supreme Court’s racial set-aside cases do not eliminate the requirement that a favorable decision be likely to remedy the plaintiffs injury. See, e.g., Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663-64, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).
Moreover, the majority’s reliance on set-aside cases is inapposite because in those case, as the majority recognizes, the plaintiff must include a showing that he is “able and ready” to seek the ultimate benefit he wants, Maj. Op., at 548, and Townes cannot make this showing. He is not “able and ready” to obtain the ultimate relief he sought in his habeas petition — which was an order declaring him eligible for discretionary parole and the shortening of his term of incarceration — because he is no longer incarcerated and is now on parole. Therefore, the redressability analysis that applies in set-aside cases does not apply here.[8]
The majority also asserts that FEC v. Akins, 524 U.S. 11, 118 S.Ct. 1777, 141 *557 L.Ed.2d 10 (1998), supports its new approach to redressability, stating that the Akins “Court recognized that ... a plaintiff can establish redressability without demonstrating that the agency would likely grant the ultimate relief sought.” Maj. Op., at 547-48. However, Akins did not state that a plaintiff can establish redress-ability without showing that the agency would likely grant the ultimate relief sought. Rather, when discussing an entirely different Article III requirement— causation — the Akins Court stated that the plaintiffs injury was fairly traceable to the agency’s determination even though the agency might reach the same decision on remand. Akins, 524 U.S. at 25, 118 S.Ct. 1777.
In addition, the majority’s reliance on Fender v. Thompson, 883 F.2d 303 (4th Cir.1989), does not support the exercise of jurisdiction in this case because, unlike Townes, the petitioner in Fender was still in prison when we decided that appeal. Thus, Fender provides no basis for exercising jurisdiction over an appeal when the petitioner has been paroled.
2.
Viewing Townes’ new argument under the proper redressability standard makes it clear that his claims are moot. Townes has not established (and it is not at all apparent to me) that a decision in his favor (i.e. one stating that the Board erred in classifying him as ineligible for parole) would be likely to result in the Board exercising its discretion and shortening his current period of parole.
When the Board classified Townes as ineligible for parole, it made that determination based on its application of Virginia’s discretionary parole eligibility statute, which provides that a person shall not be eligible for parole if he has three qualifying convictions. See Va.Code Ann. § 53.1-151. In contrast, when determining whether to shorten Townes’ parole, the Board must apply its own regulations and weigh entirely different considerations, including the best interests of society.[9] In other words, while the body that determined Townes’ eligibility for discretionary parole is the same as the one vested with authority to shorten his current term of parole, the Board’s determination in each instance is based on entirely different considerations, and there is simply nothing in the record to support the conclusion that the Board would likely shorten Townes parole if we issued a decision stating that it erred in interpreting and applying Virginia’s discretionary parole eligibility statute to Townes. Indeed, there is not even any evidence that the Board would consider the propriety vel non of its parole eligibility determination when deter mining whether to shorten Townes’ parole.[10]
*558 In short, determining whether Townes’ injury is likely to be redressed depends upon choices that would be made by the Board — an independent actor not before the Court whose exercise of legitimate discretion we cannot presume to control or predict. Indeed, my view is consistent with ASARCO, Inc. v. Kadish, 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), where a plurality of justices determined that a party failed to satisfy Article Ill’s redressability requirement. There, the plurality stated that “[wjhether the association’s claims of economic injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.” Id. at 614, 109 S.Ct. 2037.[11]
Ill
For the foregoing reasons, I dissent. I would dismiss Townes’ appeal as moot and not address the merits of his claims.

. According to a stipulation submitted by the parties, Townes is currently serving a term of parole and a separate term of probation.

. Under the terms of his parole, Townes must inter alia maintain regular employment, permit the Parole Officer to visit his home, and follow the Parole Officer's instructions.

. When a plaintiff like Townes has been released from prison during the pendency of an action, the Supreme Court has used the concept of continuing “collateral consequences” as an alternative to the injury-in-fact requirement. See Spencer v. Kemna, 523 U.S. 1, 7-8, 14, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); see also United States v. Hardy, 545 F.3d 280, 283-84 & n. 2 (4th Cir.2008).

. Our precedents in this area of law are in accord with cases from other circuits that apply the mootness doctrine and dismiss habeas cases like this one when an inmate challenges his parole eligibility and is then pa *555 roled while his case is on appeal. See, e.g., Burkey v. Marberry, 556 F.3d 142, 146-51 (3d Cir.2009); Fendler v. U.S. Bureau of Prisons, 846 F.2d 550, 555 (9th Cir.1988); Vandenberg v. Rodgers, 801 F.2d 377, 378 (10th Cir.1986); Graham v. U.S. Parole Comm’n, 732 F.2d 849, 850 (11th Cir.1984); Granville v. United States, 613 F.2d 125, 126 (5th Cir.1980); Brady v. U.S. Parole Comm’n, 600 F.2d 234, 236 (9th Cir.1979).

. Compare Brief of Appellant at 12-35 (arguing that Townes should be classified as eligible for parole), with Supplemental Brief of Appellant al 1-9 (arguing that Townes should be given a shorter period of parole). While the majority asserts that “the relief [Townes] seeks from the federal courts has remained constant,” Maj. Op., at 547 n. 1, this assertion is incorrect. In his federal habeas petition, Townes asked the court to provide three specific forms of relief, including an order directing the Board to parole Townes. Given that the Board has already paroled Townes, he is no longer seeking this form of relief and therefore the relief he is seeking from the federal courts has not remained constant.

. Further, Virginia law authorizes a state court to shorten his term of probation. See, e.g., Va.Code Ann. § 19.2-304.

. Townes may understandably want an advisory opinion which he believes would assist him in obtaining the ultimate relief he wants, but that would be true of any number of litigants in federal court, and we simply are not empowered to issue such opinions.

. The majority cites Settles v. U.S. Parole Com’n, 429 F.3d 1098 (D.C.Cir.2005), in support of its assertion that the jurisdictional framework set forth in racial set-aside cases applies in Townes’ case and supports finding that this action is still live. Maj. Op., at 548-49 n. 2. However, the mootness analysis that the D.C. Circuit applied in Settles is entirely different than the analysis that applies here. In Settles, the D.C. Circuit determined that the action was "not moot because Settles has not yet been released” from prison. Settles, 429 F.3d at 1101. It is precisely because Townes has been released from prison that his appeal is now moot.

. The Board has adopted rules and procedures governing the parole process. See Virginia Parole Board Policy Manual (Oct.2006). As relevant here, the Board's guidelines provide that "[t]he Board may terminate active parole supervision pending completion of the parole period at any time upon a finding that such termination would be in the best interest of society and the parolee.” Id. at 24-25.

. In determining whether the Board would be likely to reduce Townes' parole if we decided that it erroneously denied him consideration for discretionary parole and thereby possibly extended his period of active incarceration, the Supreme Court's opinion in United States v. Johnson, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), is instructive. There, the Court rejected the concept of interchangeability of supervised release and incarceration, holding that a supervised release term begins to run on the day the prisoner is released from prison — not the date on which he lawfully should have been released — because "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration,” and "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release.” Johnson, 529 *558 U.S. at 59, 120 S.Ct. 1114. This is also apparently true under Virginia law. See Virginia Parole Board Policy Manual, at 1. Contrary to the majority’s suggestion, see Maj. Op., at 549 n. 3, I discuss Johnson, not to establish mootness, but, to illustrate one reason why I believe Townes has not shown that the Board would be likely to shorten his parole if we issued a decision stating that he was erroneously classified as ineligible for discretionary parole.

. This is not to say that the Board’s decision to classify Townes as ineligible for parole is necessarily insulated from review. It may be that a court would have jurisdiction to review the Board’s determination if Townes brought an action for damages, for example a claim under 42 U.S.C. § 1983. See Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248-49 (4th Cir.2005) (holding that former detainee’s request for injunctive relief is moot, but his “request for monetary relief is not moot even though [he] has been released from Jail”). Here, however, Townes filed a habeas action, not a claim for damages.